# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GAYLE PARKER,<br><br>        *Plaintiff*,<br><br>vs.<br><br>AMAZON.COM, INC.; AMAZON LOGISTICS, INC.; and AMAZON WEB SERVICES, INC.<br><br>        *Defendants*. | Civil Action No. _____<br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Gayle Parker ("Plaintiff"), by and through her undersigned counsel, hereby files this Complaint against Defendants Amazon.com, Inc., Amazon Logistics, Inc., and Amazon Web Services, Inc. (collectively, "Defendants" or "Amazon") alleging as follows:

## NATURE OF THE ACTION

1. This is a complaint for employment discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII"), 42 U.S.C. § 1981 ("Section 1981").

## PARTIES

2. Plaintiff Gayle Parker ("Plaintiff") is a Black woman and a citizen of the State of Tennessee. When the events gave rise to this action, Plaintiff was employed by Amazon in Lebanon, Wilson County, Tennessee.

3. Defendant Amazon.com, Inc., is a corporate entity based in the State of Washington. Amazon.com, Inc. is an employer under Title VII. At all times pertinent hereto,

Defendant Amazon.com, Inc. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

4. Defendant Amazon Logistics, Inc. is a corporate entity based in the State of Washington. Defendant Amazon Logistics, Inc. is an employer under Title VII. At all times pertinent hereto, Defendant Amazon Logistics Inc. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

5. Defendant Amazon Web Delivery Services, LLC is a corporate entity based in the State of Washington. Defendant Amazon Web Delivery Services, LLC is an employer under Title VII. At all times pertinent hereto, Defendant Amazon Web Delivery Services, LLC has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 because the action arises under the laws of the United States, specifically, Title VII and Section 1981. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1343.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Wilson County, Tennessee, which is situated within this judicial district.

8. Plaintiff has met all administrative prerequisites to maintaining her Title VII claims in that she timely filed a charge of unlawful race discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 494-2022-01245. EEOC

issued a Determination and Notice of Rights on June 22, 2022 (Exhibit 1), which was subsequently received by Plaintiff. The current action has been timely filed.

## FACTS

9. In or around August 2020, Plaintiff began working for Amazon as a Level 1 Picker at Amazon's Lebanon, Tennessee distribution center (the "Facility").

10. In or around February 2021, Plaintiff earned a seasonal promotion to Level 3 Social Distancing Processing Assistant.

11. At all relevant times, Plaintiff met Amazon's legitimate expectations. For example, Plaintiff was never subject to a performance improvement plan, and Amazon never subjected Plaintiff to adverse disciplinary actions.

12. In or around June 2021, Operations Manager Jill Hale, a White woman, informed Plaintiff that Amazon was discontinuing the Level 3 Social Distancing Processing Assistant ("SDPA") position. Hale advised Plaintiff to await an email requesting Plaintiff indicate her interest in transferring to a permanent Processing Assistant role in the Facility.

13. On or around June 30, 2021, Senior Operations Manager Susan Jennings, a White woman, messaged Plaintiff and requested that she indicate her interest in a permanent Processing Assistant role in the Facility. Plaintiff promptly responded, indicating her interest in the role upon receiving the message on June 30, 2021.

14. In or around July to mid-August 2021, Plaintiff noticed that all of her fellow SDPAs, including but not limited to Rena Tackett, a White woman, Olivia Pope, a non-Black woman, Flor Sosa, a non-Black woman, and Olizia Bennett, a White woman, were placed in permanent Processing Assistant roles in the Facility.

3

15. Plaintiff was the only Black SDPA on the team, and Jennings did not place her into a permanent Processing Assistant role. Instead, Jennings required Plaintiff, a Level 3 employee, to return to her former Level 1 Picker role. Plaintiff reassumed the Level 1 Picker role in or around late August 2021.

16. No non-Black employees who had been working as SDPAs at the Facility were placed in a Level 1 role around this time.

17. Upon information and belief, there were thirteen vacant Processing Assistant roles available at the Facility when Plaintiff declared her interest in a permanent Processing Assistant role to Jennings and Hale.

18. In or around August 2021, Plaintiff learned from Processing Assistants Myranda Byford, a White woman, and Laura, a White woman, that Plaintiff was to be reassigned to an Inbound Stow Processing Assistant position.

19. Plaintiff, having not received a notice or confirmation of the Inbound Stow Processing Assistant placement, spoke with Jennings about the position on or around August 24, 2021. Jennings denied Plaintiff the placement, stating that no positions were available.

20. On or around August 25, 2021, Jennings informed Plaintiff that she would need to submit an application when the next Processing Assistant position became available. Jennings did not require Plaintiff's White and non-Black former-SDPA coworkers, including Tackett, Pope, Sosa, or Bennett, to apply for open positions, nor did Jennings require Plaintiff's White and non-Black former-SDPA coworkers to interview for a role.

21. In or around late August 2021, Plaintiff interviewed for a Transportation Associate position, for which she had applied. Plaintiff was neither accepted nor declined for the role.

22. In or around September 2021, Jennings promoted two non-Black Level 1 Learning Ambassadors to Processing Assistant in the Facility, despite denying Plaintiff, who had already been successfully performing as Level 3 SDPA, the role.

23. On or around September 3, 2021, Plaintiff submitted a written complaint regarding Jennings' discriminatory conduct to Amazon EthicsPoint, a reporting tool used to communicate misconduct within the company.

24. Plaintiff's EthicsPoint complaint contained the following allegations: (1) Jennings told Plaintiff that there were no Processing Assistant positions available in the Facility but subsequently promoted six non-Black associates, including Tackett, Pope, Sosa, and Bennett to Processing Assistant; (2) Jennings did not send Plaintiff the initial list of Processing Assistant vacancies but sent the list to her White and non-Black coworkers; (3) Plaintiff's applications to Processing Assistant positions, an away team position, and a Transportation Associate position were ignored; (4) Plaintiff was made to work as a Level 1 Picker (a demotion) while two White Level 1 Learning Ambassadors received Processing Assistant training and promotions to Level 3 Processing Assistant; (5) Jennings and Amazon Human Resources Representative Alyssa Claybrooks required Plaintiff to interview for a Processing Assistant role but did not require Plaintiff's similarly situated White coworkers to do the same.

25. On or around September 7, 2021, Jennings promised Plaintiff that Jennings and Senior Operations Manager Caleb would place Plaintiff in a Level 3 Processing Assistant role. Yet, Plaintiff was still required to apply to positions while her White and non-Black coworkers were selected for Level 3 Processing Assistant positions without having to apply or go through an interview process.

26. Between in or around late August and September 24, 2021, Plaintiff applied to six Processing Assistant positions, as instructed by Jennings. Yet, Jennings did not select Plaintiff for a Processing Assistant role.

27. On or around September 26, 2021, after having applied and interviewed for multiple Processing Assistant roles, Plaintiff accepted a transfer to Amazon Distribution Center BNA8 ("BNA8") as a Level 3 Processing Assistant. Plaintiff was required to report for duty on or around September 27, 2021.

28. On or around September 27, 2021, Plaintiff arrived to BNA8 only to learn from a construction worker that BNA8 was not operational. Plaintiff was instructed to return to the Facility the following day. Plaintiff lost ten hours of pay, and Amazon has failed to justly compensate her for the lost hours.

29. Plaintiff later returned to work at BNA8 on or around October 27, 2021 when BNA8 became operational.

30. On or about November 17, 2021, Plaintiff interviewed and accepted an offer for a Transportation Associate position at BNA8. However, the following day Human Resources Representative Tyler Cowen, a White man, rescinded the offer stating the offer was a mistake.

31. On or around November 28, 2021, Plaintiff emailed Amazon Human Resources, and complained about the rescinded Transportation Associate position offer.

32. Human Resources Manager Henry Padilla, a non-Black man, met with Plaintiff. Padilla apologized to Plaintiff and offered her a Transportation Associate position. However, the schedule differed from the original offer, and Plaintiff could not accept the position.

33. Plaintiff filed an EEOC complaint on or around February 14, 2022.

# CAUSES OF ACTION

## COUNT I
### 42 U.S.C. §§ 2000e, *et seq*.
### [Title VII– Race Discrimination]

34. Plaintiff adopts by reference and incorporates paragraphs 1 through 32 as if fully set forth herein.

35. Plaintiff was, at all times relevant hereto, employed by Defendant(s).

36. As an employer within the meaning of Title VII, Defendants owed at all times a duty to Plaintiff not to discriminate against her with respect to employment, promotion, or other conditions or privileges of employment due to her race.

37. Plaintiff is a Black woman.

38. At all relevant times, Plaintiff met Defendants' legitimate performance expectations.

39. Defendants took adverse action against Plaintiff when they: (1) failed to promote or assign her to positions commensurate with her skill and experience; (2) demoted Plaintiff; (3) subjected Plaintiff to additional requirements as compared to her similarly situated non-Black coworkers; and (4) assigned her to a non-operational facility.

40. Similarly situated employees outside Plaintiff's protected category were treated more favorable in that they were not subjected to the above-described adverse actions. For example, Plaintiff expressed interest in Jennings placing her as a Processing Assistant within the Facility, as instructed. Yet Jennings only gave those roles to White and non-Black SDPAs, including but not limited to Tackett, Pope, Sosa, and Bennett. Further, these non-Black comparators were not required to apply for new roles, or go through the interview process, as Plaintiff was.

41. Defendants took these adverse actions against Plaintiff because of her race.

42. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

43. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to her earning capacity, damage to her reputation, and disruption of her personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT II

**42 U.S.C. §§ 2000e, *et seq*.**
**[Title VII - Retaliation]**

44. Plaintiff adopts by reference and incorporates paragraphs 1 through 32 as if fully set forth herein.

45. Plaintiff engaged in protected activity under Title VII when she complained of race discrimination to EthicsPoint and when she filed an EEOC charge.

46. Defendants retaliated against Plaintiff after she engaged in protected activity, subjecting her to adverse actions, including denying her promotion requests to positions commensurate with her skill and experience and denying her transfer requests.

47. There was a causal connection between Plaintiff's protected activity and the adverse actions to which she was subjected.

48. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

49. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to her earning capacity, damage to her reputation, and disruption of her personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

### COUNT III

### 42 U.S.C. § 1981
### [Race Discrimination]

50. Plaintiff adopts by reference and incorporates paragraphs 1 through 32 as if fully set forth herein.

51. Plaintiff was, at all times relevant hereto, employed by Defendant(s). This relationship is considered contractual for purposes of Section 1981.

52. Defendants owed at all times a duty to Plaintiff not to discriminate against her with respect to employment, promotion, or other conditions or privileges of employment due to her race, within the Parties' contractual relationship.

53. Plaintiff is a Black woman.

54. At all relevant times, Plaintiff met Defendants' legitimate performance expectations.

55. Defendants took adverse action against Plaintiff when they: (1) failed to promote or assign her to positions commensurate with her skill and experience; (2) demoted Plaintiff; (3)

subjected Plaintiff to additional requirements as compared to her similarly situated non-Black coworkers; and (4) assigned her to a non-operational facility.

56. Similarly situated employees outside Plaintiff's protected category were treated more favorable in that they were not subjected to the above-described adverse actions. For example, Plaintiff expressed interest in Jennings placing her as a Processing Assistant within the Facility, as instructed. Yet Jennings only gave those roles to White and non-Black SDPAs, including but not limited to Tackett, Pope, Sosa, and Bennett. Further, these non-Black comparators were not required to apply for new roles, or go through the interview process, as Plaintiff was.

57. Defendants took these adverse actions against Plaintiff because of her race.

58. Defendants' discrimination was intentional.

59. As a direct and proximate result of said unlawful and intentional practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

60. As a further direct and proximate result of said unlawful and intentional practices, Plaintiff has suffered mental anguish, anxiety, harm to her earning capacity, damage to her reputation, and disruption of her personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

# COUNT IV

## 42 U.S.C. § 1981
### [Retaliation]

61. Plaintiff adopts by reference and incorporates paragraphs 1 through 32 as if fully set forth herein.

62. Plaintiff engaged in protected activity when she complained of race discrimination to EthicsPoint and when she filed an EEOC charge.

63. Defendants retaliated against Plaintiff after she engaged in protected activity, subjecting her to adverse actions, including denying her promotion requests to positions commensurate with her skill and experience and denying her transfer requests.

64. There was a causal connection between Plaintiff's protected activity and the adverse actions to which she was subjected.

65. As a direct and proximate result of said unlawful and intentional practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

66. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to her earning capacity, damage to her reputation, and disruption of her personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order which will:

A. Declare the conduct engaged in by the Defendants to be in violation of Plaintiff's rights under federal law;

B. Award Plaintiff compensatory damages against the Defendants;

C. Award Plaintiff punitive damages against the Defendants;

D. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

E. Award Plaintiff her reasonable costs and attorneys' fees;

F. Award Plaintiff such other and further relief, including equitable relief, that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all counts and claims triable by jury as raised by this Complaint.

DATED: September 20, 2022

Respectfully submitted,

**BRYAN SMITH & ASSOCIATES**

*/s/ W Bryan Smith*
W. Bryan Smith (TNBPR No. 18230)
119 S. Main Street, Suite 500
Memphis, Tennessee 38103
(901) 450-4990 – telephone
(901) 450-4898 – facsimile
bryan@bluffcitylawyers.com

*Counsel for Plaintiff*